[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case proceeded to trial on August 9, 2002, with the plaintiff, Carla Collins and Freeman Collins, appearing pro se on the operative First Amended Complaint dated March 11, 1999, to which the defendant filed an Amended Answer and Special Defenses dated August 9, 2002. The operative complaint was filed by Attorney David B. Bachman who was replaced by Carla Collins on October 15, 2001 as on file. On July 31, 2002, Freeman Collins filed his appearance in lieu of Attorney Bachman.
The First Count of the Revised Complaint Carla Collins seeks damages against the defendant, Hospital of St. Raphaels. The Second Count on behalf of Freeman Collins, her husband, seeks also compensatory damages punitive damages and costs.
The defendants filed the following special defenses:
First Special Defense to the First Count
If plaintiff Carla Collins suffered damages as alleged, then her own conduct was a substantial factor in causing those damages, in that she:
(a) failed to use reasonable care for her own safety at the date and time in the First Revised Complaint;
(b) acted unreasonably under the circumstances then and there existing at the date and time in the First Revised Complaint;
(c) unreasonably failed to recognize the danger she posed to herself and others at the date and time in the First Revised Complaint; and
(d) unreasonably and improperly attempted to leave the care of the Hospital when she posed a danger to herself and others. CT Page 13538
Second Special Defense to the First Count
If plaintiff suffered damages as alleged, then such damages were incurred due to the justifiable conduct of defendant under the circumstances then and there existing.
First Special Defense to the Second Count
If plaintiff, Freeman Collins, suffered damages as alleged, then his own conduct was a substantial factor in causing those damages, in that he:
(a) failed to use reasonable care for his own safety at the date and time in the First Revised Complaint;
(b) engaged in unruly behavior which posed a danger to himself and others at the date and time set forth in the First Revised Complaint;
(c) acted unreasonably under the circumstances then and there existing at the date and time in the First Revised Complaint.
Second Special Defense to the Second Count
If plaintiff suffered damages as alleged, then such damages were incurred due to the justifiable conduct of defendant in having Freeman Collins detained and removed under the circumstances then and there existing.
Prior to the State cause of action the suit was instituted in the U.S. District Court at New Haven in which, Droney, J., by agreement of counsel dismissing claims made under Section 1983 transferred that case to the Connecticut Superior Court, New Haven Judicial District. The transferred Federal action bearing DN CV-99 042 94 85 was consolidated with the above entitled action and the decision of this court will constitute the decision of the consolidated case. (T 11).
The law firm of Neubert, Pepe Monteith represented all the defendants at trial which were the hospital and the unknown officers, in the original complaints, employed by the now identified defendant, First Security Corporation.
Carla Collins testified that on July 29, 1996 she went to the hospital for her regular OB/Gyn appointment. She was five months pregnant and was seen by Sandy Wayne, a nurse for pregnancies. Carla asked for another CT Page 13539 doctor because she was upset and was not feeling satisfied about her treatment. Wayne offered her an opportunity to speak to a social worker at the hospital. In speaking to the social worker she said she could end up with a miscarriage. The social worker asked if Carla felt like hurting somebody. Carla answered affirmatively that it was her husband because he was not supportive. The social worker felt Carla should speak to a psychiatrist, so she was sent down to the emergency room. Wayne and two other social workers escorted her to the emergency room.
At the emergency room, Carla overheard what was being discussed by her nurse, Wayne, the social worker and the Emergency doctor, Stevens. Carla did not like what was being said to the doctor that more or less she was trying to kill herself. Carla testified that she was upset and went to walk out the door in the emergency room when she was grabbed by security guards. She had her nine year old son with her at the time. While she tried to get out the security guards were pulling her and she was pulling to get out with her son. At that time, Carla was put to the ground by the security guards shortly as she yelled about her baby they let her up and put her in an observation room within the emergency room and her son was with her. At the time of trial, the son was fifteen years old. In the observation room, she spoke to two doctors.
Carla testified that at this time, one psychiatrist, Dr. Leedom, agreed to let her go home, the other doctor, her OB/Gyn, Dr. McDonnell, opposed her leaving the hospital thinking she was suicidal.
Introduced at trial was the deposition of Dr. Bonney McDonnell (Exhibit D) who was attending Carla. Dr. McDonnell worked part-time at St. Raphaels Hospital for the Hill Center and part-time for Planned Parenthood employed by the hospital. She was the doctor when Carla first came to St. Raphaels for treatment for her pregnancy. "In Dr. McDonnell's note, dated July 29, 1996, Carla was diagnosed as diabetic, on insulin. She was thirty-five years old in her twenty-first week of gestation. Patient, Carla, was well known to the clinic for medical and social problems. Poorly compliant with diabetic management.
On the date of the incident described, in the complaint, Dr. McDonnell stated Carla reported she felt like hurting her husband. She had long history of being emotionally abused by Freeman, her husband. Dr. McDonnell concluded at the time that Carla appeared very capable of significant harm to herself, her unborn child and/or her husband. The social worker had reported that Carla felt like going off by herself and not taking her medication (insulin)."
Dr. McDonnell opined, in her medical judgment, that they would be CT Page 13540 remiss if they did not obtain a full psychiatric evaluation by a psychiatrist knowing her past history and what she was telling them when she reported to the hospital on the date of this complaint. The emergency room psychiatric department referred her for outpatient evaluation. Dr. McDonnell was unaware of the alleged disagreement to let Carla leave the hospital. Dr. McDonnell testified in her deposition, page 30, line 11, through line 22 that she was unaware of what Dr. Leedom was going to decide and that she spoke to Dr Leedom because she felt Dr. Leedom needed the information to make her decision. Dr. McDonnell denied there was any disagreement between her recommendations or Dr. Leedom's decision.
Dr. McDonnell knew she was upset and opined that any women that is diabetic is a complicated pregnancy and can be particularly upset.
Dr. McDonnell's only involvement in this case was to get Carla to the emergency room based upon the information given to her and based upon the history of the patient to the emergency room so Dr. Leedom could talk to her. (Deposition Exhibit D, page 36, lines 18-22).
Carla testified that when Freeman came to the hospital she tried to tell him something which he did not understand and that she became angry with him. Freeman asked the doctor in the emergency room what was gong on with his wife and son and that he wanted to take them home, at which time the turmoil occurred resulting in the security guards being called. In trying to help Freeman, Carla asserts she was grabbed and yanked by the security guards and then the drapes were closed so she was unaware of what was going on.
Carla was admitted to the psychiatric ward and stayed overnight. She signed herself out the next-day. Carla testified she went for Treatment at Yale New Haven Hospital, but no x-rays could be taken for her until after her pregnancy. She delivered her child and testified she did not go for treatment because she became pregnant again shortly thereafter.
The plaintiff candidly testified that she did not get any treatment for her shoulder for almost six years. (T, July 31, 2002, p. 43). Although she asserts that she visited doctors as a result of the incident, no corroborating proof was introduced in evidence. Carla testified she delivered a daughter from her pregnancy who was five years at the time of trial. Her next pregnancy after this incident of her delivery November 1996 was in February of 1997.
Carla testified she did not receive any bills for treatment caused by her complaint of the July 29, 1996 incident. CT Page 13541
A report dated February 26, 2002 was introduced. (Exhibit 1). This request was the only documentation for her claimed injuries.
The court took measures to assist the pro se plaintiff to introduce some evidence of reports and bills that were claimed by the plaintiff, Carla Collins. The court concludes that the plaintiff failed to meet her burden of proof regarding medical treatment or expenses arising out of or caused by the alleged incident at the hospital on July 29, 1996.
On cross-examination, Carla Collins admitted she had at least two times before the incident of July 29, 1996, had psychiatric outpatient care. Between the ages of thirteen through nineteen when she was a ward of the State of Connecticut, she had psychiatric problems. During an extensive cross-examination the defendant showed she had an incident of abuse. Carla admitted that Freeman upset her and there was a history of spousal abuse.
The court concludes from all the evidence adduced at trial that the plaintiff, Carla Collins, has not met her burden of proof to show that the action taken by the defendant guards was a willful and deliberate act. The defendants under the circumstances reasonably took the action taken to protect the plaintiff when she appeared at the hospital for treatment on July 29, 1996. Carla unreasonably and improperly attempted to leave the care of the hospital.
Judgment is entered in favor of the defendants as to the First Count.
The Second Count relates to the claims of Plaintiff Freeman Collins (Freeman).
He claims that on July 29, 1996 he was summoned from his employment to St. Raphaels emergency room (ER). At the ER he learned his wife Carla was being committed for psychiatric treatment and their son Colby who had accompanied Carla to the hospital would be placed temporarily in foster care. Upon not getting answers to his inquiries satisfactory to him from Dr. Stevens, in charge of the ER he became belligerent and unruly causing the ER to summon the security guards to appear to put him in control and maintain decorum.
Freeman had just started a "hot dog" business on Edgewood Avenue in New Haven. On cross-examination, Freeman was unable to call any witnesses or himself to state the value of the stand, which he said was destroyed after the incident. Freeman presented no bills or medical reports about his alleged injuries. Carla admitted that she wanted to bust husband in the head but did not mean to do it physically. CT Page 13542
Freeman had only worked one day at the hot dog stand and the only loss was about $85 that he would have earned.
Freeman alleges that the security officers threw him violently to the ground and exceeded the level of force reasonably necessary to arrest the plaintiff. Freeman alleges injury to knees, arm and torso emotional distress and economic loss as set-forth his claims were not supported by any medical evidence or bills.
Diane Rescigno a registered nurse for twenty years who was in charge of the ER. As the "Charge Nurse" her duties include maintaining patient flow. She coordinates other nurses. Her note in the hospital record of Carla page 29 states patient (Carla) admitted father unavailable because of arrest, child Colby placed with step brother George Troche. Exhibit A, the hospital record shows that on July 30, 1996 signed by psychiatric nurse that "PT (Carla) refused to answer any question."
The court has already discussed the first count relating to Carla.
Freeman was opposed to Carla being admitted for treatment. At first he went home with Colby and then returned to take his wife out of the hospital which was opposed.
Freeman did not produce any evidence to support his claim for any injuries arising out of the Saint Raphael's ER.
Rescigno testified there was no note in the medical record that Carla Collins was thrown to the ground. Rescigno's note in this case was to be sure that Carla was under care and that Colby was being safely cared for. Rescigno further testified that when patients are placed in observation for psychiatric evaluation they might need to be restrained from leaving the hospital.
Michael Morano, the shift supervisor for the defendant First Security at the hospital who was on duty from 4:00 to 12:00 P.M. Morano was shown Exhibit B which he described as an incident report. Morano testified that the ER or other places in the hospital would call the central center about a complaint and he would dispatch himself and other officers to area depending on the complaint. The officers would formulate a plan as to how to handle the situation. On this occasion the officers were in between the quiet room and the other patients along in between hallways in which they had I.V. poles so they had to block off that area. Morano described that there was a great deal of yelling and screaming going on requiring some visitors to be escorted out of the area. Morano told Mr. CT Page 13543 Collins he had to leave the area which he refused. Morano felt it was necessary to detain Freeman for arrest before the situation got any further. Morano testified the method is to bring the assailant to the ground and then to handcuff him. Morano denied throwing Freeman to the ground. Morano turned Freeman over to the police officer who was on duty who is normally around the ER. The New Haven Police Department who affected the arrest, released Freeman shortly thereafter.
Freeman was very belligerent using strong vulgarities and he started to swing his arms about. The court concludes from all the evidence adduced at trial that Freeman Collins has not met his burden of proof to establish either liability on the defendants or to prove any damages.
The means used by the defendants under the circumstances to maintain the security of the hospital, the patients and visitors at the time were reasonable.
Accordingly, judgment is entered in favor of the defendants as to the Second Count.
Frank S. Meadow Judge Trial Referee CT Page 13544